## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROBERT HALF INTERNATIONAL INC.,
a Delaware corporation,
2884 Sand Hill Road, Suite 200
Menlo Park, California 94025

            Plaintiff,

    vs.

NICHOLAS BILLINGHAM
55 M Street, N.E., #434
Washington, D.C. 20002

and

BEACON HILL STAFFING GROUP, LLC,
a Massachusetts limited liability company,
125 Bowdoin Street
Boston, Massachusetts 02108

    <u>Serve On:</u>
    Corporation Service Company
    1090 Vermont Avenue, N.W.
    Washington, D.C. 20005

          Defendants.

**Civil Action No.  1:18-cv-1001**

## <u>VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES</u>

COMES NOW Plaintiff, Robert Half International Inc. ("RHI"), and, for its causes of action against Defendants Nicholas Billingham ("Billingham") and Beacon Hill Staffing Group, LLC ("Beacon Hill," and with Billingham, the "Defendants"), states as follows:

## <u>NATURE OF THE ACTION</u>

1.    This is an action to redress unlawful conduct by RHI's former employee, Billingham, and his current employer, Beacon Hill.  RHI seeks to enforce its rights arising out of Billingham's employment agreement.  Additionally, Beacon Hill has tortiously interfered and is

continuing to tortiously interfere with Billingham's employment agreement through its employment of Billingham and, as a result, has been unjustly enriched.

2.     Billingham is a former RHI employee who resigned his employment with RHI and is now working for Beacon Hill, a direct competitor of RHI.  A Beacon Hill press release announcing its hiring of Billingham included a statement from Billingham admitting that he plans to take "market share" from competitors – and there is no doubt that RHI is a competitor – in flagrant violation of Billingham's contractual post-employment restrictions to which he agreed in his RHI employment agreement.

3.     As a condition to his employment at RHI, Billingham entered into an employment agreement with RHI in which he agreed (among other things) not to Solicit certain Customers and Other Employees of RHI (all defined terms in the employment agreement) for twelve months after his employment with RHI ended, not to compete with RHI for twelve (12) months after his employment with RHI ended within a limited fifty (50) mile geographic area that includes the District of Columbia, and not to use or disclose RHI's confidential and trade secret information.

4.     Billingham is working in the District of Columbia for a direct competitor of RHI, and in a directly competitive position, squarely in breach of his contractual obligations under his employment agreement with RHI.   In addition, Billingham has solicited and/or is soliciting customers of RHI on behalf of Beacon Hill in further violation of his employment agreement.

5.     RHI is entitled to temporary, preliminary, and permanent injunctive relief to enforce Billingham's contractual obligations.  RHI is also entitled to compensatory and consequential damages incurred as a result of Billingham's flagrant disregard of his obligations

with respect to the employment agreement and for Beacon Hill's tortious interference of contract and resulting unjust enrichment.

## THE PARTIES, JURISDICTION, AND VENUE

6.      Plaintiff RHI is a Delaware corporation, with its principal place of business and headquarters in Menlo Park, California.  RHI maintains numerous offices throughout the country, including in the District of Columbia at 1401 Eye Street, N.W., Suite 400, Washington, D.C. 20005.

7.      Defendant Billingham is an individual who resides, on information and belief, at 55 M Street N.E., #434, Washington, D.C. 20002.

8.      Defendant Beacon Hill is a limited liability company organized under the laws of Massachusetts.  Beacon Hill's principal place of business and headquarters are at 152 Bowdoin Street, Boston, Massachusetts 02108.  On information and belief, none of Beacon Hill's members are citizens of Delaware or California.

9.      Beacon Hill maintains several offices throughout the country, including in the District of Columbia at 1120 Connecticut Avenue, N.W., Suite 480, Washington, D.C. 20036.

10.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because RHI, Billingham, and Beacon Hill are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     This Court has personal jurisdiction over Billingham under principles of specific and general jurisdiction, because he is a citizen of the District of Columbia.

12.     This Court has personal jurisdiction over Beacon Hill under principles of specific and general jurisdiction because Beacon Hill transacts and conducts business within the District of Columbia, operates an office in the District of Columbia, and has sufficient minimum contacts with the District of Columbia such that exercise of jurisdiction over Beacon Hill does not offend

traditional notions of fair play and substantial justice. Among other things, Beacon Hill's employment of Billingham in its District of Columbia office and Billingham's pursuit, on behalf of Beacon Hill, in the District of Columbia, of RHI's customers violate Billingham's contractual obligations to RHI.

13.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the actions giving rise to the claims herein occurred in the District of Columbia.

## FACTUAL BACKGROUND

14.     RHI is a professional staffing services firm, specializing in recruiting and placing personnel candidates in both permanent and temporary job positions in various fields, including specifically the information technology, financial and administrative areas. As such, some of RHI's most valuable assets and resources include its relationships with its customers (who purchase employment-related services supplied by RHI); its pool of qualified candidates for employment; its confidential information relating to its customers (including their preferences, needs, requirements and the like) and its candidate pool; and the goodwill and business reputation which RHI enjoys.

15.     RHI offers its services through several specialized divisions, including: (i) Accountemps®, which specializes in the placement of accounting, finance and bookkeeping professionals; (ii) OfficeTeam®, which specializes in the placement of administrative support professionals; and (iii) Robert Half Management Resources®, which specializes in the placement of senior-level accounting, finance and business systems professionals. These placements can involve part-time or full-time services, and can be done on an interim, temporary or project-specific basis. In addition, a candidate can be permanently placed with a RHI customer (i.e., "direct hire"), or hired by the customer (i.e., "converted") during or in connection with a temporary placement.

**Billingham's Employment With RHI**

16.     Billingham began his employment with RHI on or around May 27, 2014, as an OfficeTeam® Staffing Manager in RHI's Boston, Massachusetts office.  In November 2015, Billingham was promoted and became an OfficeTeam® Division Director.  In December 2016, Billingham became an Accountemps® Senior Staffing Manager.  In or around July 2017, Billingham transferred to RHI's Washington, D.C. office, where he was an Accountemps® Senior Staffing Manager until his abrupt resignation on February 23, 2018.  During his employment with RHI, Billingham had confidential and trade secret information regarding RHI's Boston and Washington, D.C. businesses, including confidential and competitively valuable client and candidate information.

17.     During his employment with RHI, Billingham was allowed to develop, maintain, and establish valuable relationships with RHI's customers and candidates, on RHI's behalf and at its expense.

18.     Billingham was encouraged to, and did, submit expenses for business entertainment/development, which RHI reimbursed, and was further encouraged to attend, and did attend, networking events as a "face" of RHI.

19.     While he was employed by RHI, Billingham was responsible for (among other things) developing, obtaining, and expanding business from new and existing RHI Customers by meeting and talking with hiring managers and other key personnel in order to understand their staffing needs, making recommendations to customers regarding professionals who were available to meet their requirements, and providing customer service for existing customers to ensure their expectations were being met.

20.     Billingham also met with candidates in RHI's Boston and Washington, D.C. offices to evaluate their skills and understand their job needs, preferences and requirements, and strategized with his RHI teammates, both in his own division and in other divisions, to accomplish RHI's business goals and to cross-market the various services offered by RHI.

21.     Billingham was given access to and obtained extensive knowledge of confidential, proprietary and/or trade secret information regarding RHI's customers, candidates and business.  This information includes, for example, data regarding (i) the business strategies of RHI, particularly its marketing and revenue-generation strategies; (ii) the names and identities of RHI's existing and targeted customers and candidates and the contact persons and other information regarding those customers and candidates; (iii) the specific needs, preferences, and requirements of particular RHI customers and candidates; (iv) the terms of agreements RHI may have with its customers and candidates; (v) the strengths and weaknesses of RHI's business model; and (vi) other aspects of RHI's confidential plans to compete with and differentiate itself from its competitors.

22.     Billingham also regularly received reports containing confidential and competitively valuable RHI information, such as revenue figures and projections, productivity metrics and goals, top candidates, pricing, conversion fees, and the status of open job orders.

23.     In short, Billingham was paid by RHI (among other things) to develop goodwill and relationships for and on behalf of RHI, and to understand and use confidential customer and candidate-related information for and on behalf of RHI.

24.     Billingham also received training, both formal and informal, in RHI's Boston and Washington, D.C. offices.  Billingham received training, for example, in RHI's Washington, D.C. office when he transferred from RHI's Boston office to RHI's Washington, D.C. office so

that Billingham could learn and understand the Washington, D.C. market and RHI's Washington, D.C. business operations.

25.     RHI's success is dependent on (i) its ability to develop and maintain customer and candidate relationships and goodwill and (ii) its efforts to compile, organize, and analyze customer and candidate information and to effectively utilize such information to serve the needs of its customers and candidates.  RHI expends significant effort and expense to maintain and grow existing customer and candidate relationships and goodwill; develop new relationships and goodwill; and develop, maintain and protect its confidential and proprietary business information, including its databases and compilations regarding customers and candidates.  This information is competitively-valuable and not generally known or readily ascertainable by others, and RHI takes reasonable measures to protect it from being disclosed.

**Billingham's Employment Agreement With RHI**

26.     As a condition to his employment with RHI, Billingham executed an Employment Agreement containing certain restrictions on his post-employment competitive activities.  A true and correct copy of Billingham's May 27, 2014 employment agreement (the "Agreement") is attached hereto as **Exhibit A**, and is incorporated herein by reference.

27.     Billingham also signed a Policy Certification stating that he had read and understood, among other things, an Acknowledgement of Trade Secret Laws, RHI's Employee Handbook, RHI's Corporate Code of Conduct, and RHI's Information Security Policy Notice.

28.     The Agreement prohibits, among other things, the disclosure and misuse of RHI's confidential information.  Section 8 of the Agreement provides:

> Disclosure or Misuse of Confidential Information.  Employee shall not, at any time during Employee's employment by any of the RHI Companies or thereafter, directly or indirectly, disclose, furnish or make accessible to any person, firm, corporation, or other entity, or make use of, any confidential information of any of the RHI Companies or any third parties to whom RHI Companies owe a duty of

confidentiality, including, without limitation, information with respect to the name, address, contact persons or requirements of any existing or prospective customer, client, applicant, candidate or employee of any of the RHI Companies (whether having to do with temporary, contract, regular, or full-time employment) and information with respect to the procedures, advertising, finances, organization, personnel, plans, objectives or strategies of the RHI Companies. Employee acknowledges that such information was developed by the RHI Companies at great time and expense and is safeguarded by the RHI Companies as trade secrets.  Upon termination of Employee's employment, Employee shall immediately deliver to Employer all records, manuals, training kits, and other property belonging to Employer or any of the other RHI Companies or used in connection with the business of Employer or any of the other RHI Companies, and all copies thereof, which may be in Employee's possession, custody or control.   The provisions of this Section shall survive termination of either Employee's employment or this Agreement for any reason.

Agreement § 8.

29.     In Section 9 of the Agreement, Billingham agreed that, during the 12-month period after the date his employment with RHI ended (the "Termination Date"), he would not "directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office."  *Id.* § 9.

30.     In Section 10 of the Agreement, Billingham agreed that, during the 12-month period after the Termination Date, he would not "directly or indirectly, on behalf of any Competitor, Solicit the trade or patronage of any Customer or perform services for any Customer."  *Id.* § 10.

31.     In Section 11 of the Agreement, Billingham agreed that, during the 12-month period after his Termination Date, he would not "directly or indirectly, at any time or for any reason, either alone or jointly, with or on behalf of others, whether as principal, partner, agent, representative, equity holder, director, employee, consultant or otherwise, Solicit any Other

Employee to leave the employ of the RHI Companies, either for Employee's own account or for any other person, firm or company." *Id.* § 11.

32.     The term "Applicable Office" is defined in the Agreement as "any office of any RHI Companies for which Employee has performed work, or over which Employee has exercised any form of direct or indirect supervisorial authority, during the one year period preceding the Termination Date." *Id.* § 7.

33.     The term "Customer" is defined in the Agreement as "any person, firm, entity, business or organization for whom any of the Applicable Offices performs or has performed services in the course of its business within the twelve months preceding the Termination Date." *Id.*

34.     The term "Competitor" is defined in the Agreement as "any executive recruiting firm, employment agency, temporary personnel service business or other staffing services business engaged in whole or in part in any business conducted by the RHI Companies, regardless of whether such entity conducts its business as a sole proprietorship, partnership, corporation or in other form." *Id.*

35.     The term "Solicit" is defined in the Agreement as "soliciting, inducing, attempting to induce or assisting any other person, firm, entity, business or organization in any such solicitation, inducement or attempted inducement, in all cases regardless of whether the initial contact was by Employee, an Other Employee, or any other person, firm, entity, business or organization." *Id.*

36.     The term "Other Employee" is defined in the Agreement as "any individual (other than Employee) who is employed or engaged by an Applicable Office or was employed or

engaged by an Applicable Office within the six months prior to Employee's Termination Date, whether as a regular employee, temporary employee or independent contractor." *Id*.

37.     In Section 14 of the Agreement, Billingham expressly agrees that the restrictions in Sections 9, 10, and 11 of the Agreement were "reasonable and necessary in order to protect and maintain the proprietary and other legitimate business interests" of RHI, and that these restrictions would not prevent him from otherwise earning a livelihood.  *Id*. § 14.

38.     Billingham also expressly agreed that "in the event of an actual or threatened breach by Employee of such covenants, Employer and the other RHI Companies would be irreparably harmed and the full extent of injury resulting therefrom would be impossible to calculate and Employer and the other RHI companies therefore will not have an adequate remedy at law.  Accordingly, Employee agrees that temporary and permanent injunctive relief would be appropriate remedies against such breach, without bond or security[.]"  *Id.*

39.     The Agreement provides that it "shall be governed by and construed in accordance with the laws of the state in which an activity occurred or threatens to occur and with respect to which legal or equitable relief is sought."  *Id.* § 21.  Billingham is working in the District of Columbia in violation of the Agreement and both equitable and legal relief are being sought pursuant to the laws of the District of Columbia.

**<u>Billingham's Resignation and Violations of the Agreement</u>**

40.     On or around February 23, 2018, Billingham submitted his resignation from RHI. Billingham did not tell RHI that he intended to work for RHI's direct competitor, Beacon Hill, or that he intended to do so at Beacon Hill's District of Columbia office.

41.     On or around February 26, 2018, RHI provided Billingham a "Reminder of Post-Termination Obligations," which provided in part that "[t]he purpose of this letter is to remind you of your obligations to [RHI] concerning its confidential information and trade secrets, which

were made available to you during the course of your employment, and of certain other continuing obligations that may be applicable to you."  A true and correct copy of RHI's February 26, 2018 "Reminder of Post-Termination Obligations" is attached hereto as **Exhibit B**, and is incorporated herein by reference.

42.     According to a March 15, 2018 Beacon Hill press release, Billingham is now working as a Division Manager of Beacon Hill's newly-formed Washington, D.C. division of Beacon Hill Financial, and is "responsible for leading temporary and contract staffing for Beacon Hill Financial in the Washington D.C. office."  A true and correct copy of Beacon Hill's March 15, 2018 press release ("Press Release") is attached hereto as **Exhibit C**, and is incorporated herein by reference.

43.     Billingham is quoted in the Press Release as stating, "I look forward to adding to my team quickly, and taking market share from our competitors."  Press Release at 1.

44.     Beacon Hill is a professional staffing firm that directly competes with RHI, including specifically in the District of Columbia. Beacon Hill "provide[s] direct hire, executive search, temporary staffing, contract consulting, temp/contract-to-hire [ ] to emerging growth companies and the Fortune 500 across multiple market sectors and all industries."  *Id.*

45.     Beacon Hill's Press Release further states that Billingham came from "one of the largest staffing agencies in the world, where [Billingham] was a leading contributor to the growth of the temporary finance and accounting practice in both the Boston and DC market."  *Id.* Billingham's new position with Beacon Hill appears to place him squarely in competition with RHI's District of Columbia office, including with respect to the same temporary finance and account market in which he was directly involved for RHI in the District of Columbia.

46.     Prior to his employment at RHI, Billingham had no staffing agency work experience.  The extent of Billingham's experience and training in the placement industry, therefore, is the result his employment and training programs with RHI.

47.     On or around March 21, 2018, RHI sent a letter to Billingham reminding him of the Agreement and his contractual obligations under the Agreement and also requesting that he provide RHI with written assurances that he "understand[s] and will abide by each of the post-termination restrictions outlined above."  A true and correct copy of RHI's March 21, 2018 letter without enclosures (the "March 21, 2018 Letter") is attached hereto as **Exhibit D**, and is incorporated herein by reference.

48.     As of this filing, Billingham has not responded to RHI's March 21, 2018 Letter.

49.     On information and belief, Billingham is and will be soliciting business from RHI Customers on behalf of Beacon Hill in violation of his contractual obligations under the Agreement.  For example, Beacon Hill has listed a posting on glassdoor.com that specifically identifies a RHI Customer, within the job description.  Given the sensitivity of RHI's customer information, RHI is not disclosing the name of the RHI Customer.  A true and correct redacted copy of the website screenshot ("Glassdoor Job Description") is attached hereto as **Exhibit E**, and is incorporated herein by reference.  During his employment at RHI, Billingham performed services for this RHI Customer and, on or about January 25, 2018, directly contacted this RHI Customer to fill the exact same position.  Billingham is now, either directly or indirectly through Beacon Hill, attempting to solicit or perform services for a RHI Customer covered by his Agreement.

50.     RHI has spent over fifty (50) years establishing relationships and goodwill with

RHI Customers and candidates in the District of Columbia as well as developing RHI's customer

and candidate lists.

51.     As a result of his employment with RHI, Billingham relied on these valuable

relationships and goodwill with RHI's Customers and candidates, and was also given access to

RHI's confidential, proprietary, and trade secret information about RHI's business, customers

and candidates.  This information and these relationships and goodwill will give Billingham an

unfair competitive edge if he is permitted to use and exploit this information and these

relationships and goodwill for or on behalf of his new employer, Beacon Hill, in violation of his

obligations under the Agreement.

52.     On information and belief, all of Billingham's actions described herein that were

taken after he joined Beacon Hill, were taken on behalf of Beacon Hill.

**Additional Allegations Related to Defendant Beacon Hill**

53.     In March 2018, Beacon Hill opened Beacon Hill Financial in Washington, D.C.

Press Release at 1.

54.     On information and belief, Beacon Hill knew or had reason to know that

Billingham was subject to noncompetition, non-solicitation, and confidentiality provisions in his

Agreement with RHI, before, during, and after Beacon Hill recruited him.

55.     RHI sent Beacon Hill a copy of its March 21, 2018 Letter and a copy of the

Agreement.

56.     On information and belief, Beacon Hill's business model is based in part on hiring

employees who have restrictive covenants and employing them in violation of these covenants,

as Beacon Hill has done here.  On information and belief, Beacon Hill hires employees away

from its competitors in part to take advantage of the employees' goodwill and relationships with, and their knowledge of, their former employer's customers, candidates, and employees.

57.     On information and belief, Beacon Hill knowingly induced Billingham to breach and continue to breach his Agreement with RHI.

58.     On information and belief, Beacon Hill has used and is using RHI's confidential and trade secret information to solicit RHI Customers and/or candidates.  As previously stated, Beacon Hill's Glassdoor Job Description is for the same position with the same RHI Customer that Billingham personally and directly with while employed at RHI.

59.     Billingham is in a prime position with Beacon Hill to exploit, for Beacon Hill's benefit, the goodwill, relationships, and/or confidential business information he obtained or developed at RHI.

60.     On information and belief, Beacon Hill regularly and repeatedly engages in a practice of knowingly inducing individuals to breach their restrictive covenants and views non-compete and related disputes simply as a cost of doing business.

61.     On information and belief, Beacon Hill and/or employees Beacon Hill has hired have been sued in over fifty (50) cases in similar matters by staffing industry competitors where Beacon Hill has employed persons in violation of their restrictive covenants.

**COUNT I**
**BREACH OF CONTRACT**
**(Against Billingham)**

62.     RHI re-alleges and incorporates herein the allegations contained in paragraphs 1 through 61 of this Verified Complaint as if fully set forth herein.

63.     The Agreement between RHI and Billingham is a valid and enforceable contract.

64.     The provisions of the Agreement cited above are reasonable and enforceable to protect RHI's legitimate protectable interests.

65.     Billingham is currently employed for a direct competitor of RHI – Beacon Hill – within a fifty (50) mile radius of an Applicable Office – RHI's Washington, D.C. office – in direct violation of the Agreement.  More specifically, Billingham's employment with Beacon Hill in the District of Columbia violates Section 9 of the Agreement, which states that "for a period of twelve (12) months after the Termination Date," Billingham "shall not, directly or indirectly, own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of, any Competitor in any part of the area encompassed within a radius of fifty (50) miles from any Applicable Office." Agreement § 9.

66.     In addition, Billingham has violated Section 10 of the Agreement by improperly soliciting business from RHI Customers covered by the Agreement, including at least one Customer with whom Billingham directly dealt on behalf of RHI during the last year of his employment with RHI.

67.     On information and belief, Billingham has violated Section 11 of the Agreement by improperly soliciting Other Employees to leave the employ of RHI.

68.     RHI has been damaged and harmed and, unless Billingham is enjoined, will continue to be damaged and harmed, due to Billingham's conduct in violation of the Agreement.

69.     As Billingham expressly agreed in the Agreement, RHI has no adequate remedy at law to protect itself from the continuing damage and injury which have been and/or will be caused by the acts of Billingham in violation of the Agreement.  Monetary damages would not fully or adequately compensate RHI for the harm and injury caused by such acts.  RHI has been

and will continue to be subject to irreparable harm if Billingham is permitted to violate the Agreement.

70.     As a direct and proximate cause of Billingham's breach of the Agreement, RHI has suffered, and will continue to suffer, actual damages in an amount to be proven at trial.

71.     RHI is entitled to temporary, preliminary and permanent injunctive relief against further interference.

72.     RHI is entitled to an award of actual damages.

73.     RHI has been and/or will be damaged and harmed due to Billingham's conduct in violation of the Agreement.

## COUNT II
## ANTICIPATORY BREACH OF CONTRACT
### (In the Alternative Against Billingham)

74.     RHI re-alleges and incorporates herein the allegations contained in paragraphs 1 through 61 of this Verified Complaint as if fully set forth herein.

75.     The Agreement between RHI and Billingham is a valid and enforceable contract.

76.     The provisions of the Agreement cited above are reasonable and enforceable to protect RHI's legitimate protectable interests.

77.     RHI is a direct competitor of Beacon Hill in the District of Columbia.  Based on Beacon Hill's Press Release, Billingham has stated that he "look[s] forward to adding to [his] team quickly, and taking market share from [Beacon Hill's] competitors."  Press Release at 1.

78.     RHI has requested assurances from Billingham that he "understand[s] and will abide by each of the post-termination restrictions outlined above."  March 21, 2018 Letter at 2. Billingham has failed to provide RHI with any assurances that he intends to comply with the Agreement, including the non-solicitation provisions of Sections 10 and 11.

79. Billingham's own statements and conduct – in the Press Release and through his failure to respond to RHI's March 21, 2018 Letter and his continued employment with Beacon Hill – demonstrate that he does not intend to honor his obligations under the Agreement.

80. RHI will be damaged and harmed due to Billingham's conduct in violation of his Agreement.

81. As Billingham expressly agreed in the Agreement, RHI has no adequate remedy at law to protect itself from the continuing damage and injury which will be caused by the acts of Billingham. Monetary damages would not fully or adequately compensate RHI for the harm and injury caused by such acts. RHI has been and will continue to be subject to irreparable harm if Billingham is permitted to violate the Agreement.

82. As a direct and proximate cause of Billingham's anticipated breach of the Agreement, RHI will suffer actual damages in an amount to be proven at trial.

83. Under Section 14 of the Agreement, RHI is entitled to temporary and permanent injunctive relief to enjoin Billingham's breach and/or threatened breach of the Agreement.

## COUNT III
## TORTIOUS INTERFERENCE WITH CONTRACT
### (Against Beacon Hill)

84. RHI re-alleges and incorporates each and every allegation in paragraphs 1 through 61 of this Verified Complaint as if fully set forth herein.

85. Billingham agreed not to use or disclose RHI's confidential trade secret information, not to compete with RHI within a 50 mile radius of an Applicable Office, not to solicit other RHI employees, and not to solicit RHI Customers.

86. Beacon Hill knew or reasonably should have known of these covenants.

87.     Beacon Hill has often interfered tortiously with the restrictive covenants between employees it has hired and their former employers, including RHI.  Indeed, RHI has sued Beacon Hill on at least three other occasions for Beacon Hill's flagrant disregard of RHI's employment agreements.

88.     Beacon Hill knew or reasonably should have known that Billingham had a similar agreement that would prevent Billingham from working for Beacon Hill subject to the terms of the Agreement.  Nevertheless, Beacon Hill hired Billingham, and Billingham announced shortly thereafter that he was "look[ing] forward to . . . taking market share from [Beacon Hill's] competitors."

89.     RHI had an established office in Washington, D.C. before Beacon Hill opened Beacon Hill Financial in Washington, D.C., and Beacon Hill Financial now is and will be competing directly against RHI in the Washington, D.C. area and, based on the Press Release and Billingham's own admissions, attempting to take market share away from competitors such as RHI.

90.     To the extent that Beacon Hill did not already know of the Agreement at the time of hiring Billingham, it would have learned of the Agreement when RHI sent Beacon Hill a copy of the March 21, 2018 Letter, which included a copy of the Agreement.  As of this filing, Beacon Hill continues to employ Billingham.

91.     Beacon Hill, by words or conduct, or both, intentionally caused Billingham to breach the Agreement.

92.     Beacon Hill's interference with the Agreement was and remains improper.

93.     On information and belief, Beacon Hill often employs individuals in violation of their restrictive covenants because Beacon Hill believes that it is more profitable to employ such

persons even though doing so breaches their contractual obligations.  Beacon Hill's employment of Billingham is but one recent example of Beacon Hill's blatant disregard of its newly-hired employees' restrictive covenants with their former employers.

94.     Beacon Hill's interference with the Agreement has caused and continues to cause RHI damages.

95.     Beacon Hill's interference with the Agreement was done and continues to be done in a willful and wanton fashion, with an utter disregard for RHI's rights.

96.     RHI is entitled to temporary, preliminary and permanent injunctive relief against Beacon Hill's further interference.

**COUNT IV**
**UNJUST ENRICHMENT**
**(Against Beacon Hill)**

97.     RHI re-alleges and incorporates each and every allegation in Paragraphs 1 through 61 of this Verified Complaint as if fully set forth herein.

98.     At the expense of RHI, Beacon Hill is receiving a benefit through its improper hiring of Billingham, and that benefit includes all of the revenue generated by Billingham at Beacon Hill.

99.     Beacon Hill knew that its hiring of Billingham was improper and in violation of the Agreement.

100.     Beacon Hill has often improperly and knowingly induced individuals to breach their restrictive covenants with competitors, including RHI.

101.     Beacon Hill knew or reasonably should have known that Billingham had an employment agreement with RHI containing restrictive covenants that would prevent Billingham

from working for Beacon Hill in his current position with Beacon Hill.  Nevertheless, Beacon Hill hired Billingham and put him to work in direct violation of the Agreement.

102.    Beacon Hill's receipt of the benefits obtained by its improper employment of Billingham is unjust and inequitable.

103.    On information and belief, Beacon Hill often employs individuals in violation of their restrictive covenants because Beacon Hill believes that it is more profitable to employ such persons even though doing so breaches their contractual obligations.  Beacon Hill's employment of Billingham is but one recent example of Beacon Hill's blatant disregard of its newly-hired employees' restrictive covenants with their former employers.

104.    RHI is entitled to temporary, preliminary and permanent injunctive relief against further interference.

105.    RHI is entitled to an award of damages in the form of those profits Billingham produces for the benefit of Beacon Hill.

**WHEREFORE**, RHI prays for judgment against Billingham and Beacon Hill as follows:

(a)    Entry of judgment in favor of RHI and against Billingham and Beacon Hill;

(b)    Enjoin Billingham temporarily, preliminarily during the pendency of this action, and permanently thereafter from violating Sections 8, 9, 10 and 11 of the Agreement;

(c)    Enjoin Beacon Hill temporarily, preliminarily during the pendency of this action, and permanently thereafter from interfering with Billingham's obligations under the Agreement and from being unjustly enriched as a result;

(d)    Order that Billingham return to RHI all property, documents, or other materials belonging to RHI, in accordance with Section 8 of the Agreement;

(e)      Order that Billingham and Beacon Hill pay to RHI fair and reasonable compensatory damages in an amount to be proven at trial;

(f)      Award RHI unjust enrichment damages and equitable restitution in an amount to be proven at trial under Count IV;

(g)      Award pre-judgment and post-judgment interest on all damages awarded at trial; and

(h)      Order such further and additional relief to RHI as the Court deems just and proper.

Dated:  April 27, 2018                               Respectfully Submitted,

                                                             /s/ Alec W. Farr
                                                             Alec W. Farr (D.C. Bar # 440046)
                                                             Bryan J. Harrison (D.C. Bar #1016187)
                                                             **BRYAN CAVE LEIGHTON PAISNER LLP**
                                                             1155 F Street, N.W.
                                                             Washington, D.C. 20004
                                                             Email:  awfarr@bclplaw.com
                                                                          bryan.harrison@bclplaw.com
                                                             Phone: (202) 508-6000
                                                             Fax:    (202) 508-6200

                                                             *Attorneys for Plaintiff Robert Half*
                                                             *       International Inc.*

## **VERIFICATION**

WASHINGTON, D.C.     )
                                 )
DISTRICT OF COLUMBIA )

Joshua Howarth, being duly sworn, deposes and says:

1.      I am employed as a District Director in Washington, D.C. for Robert Half International Inc. ("RHI"), the Plaintiff in the above-captioned proceedings.

2.      I have personal knowledge of the allegations set forth in the foregoing Verified Complaint except for those stated on information and belief, and as to those allegations, I believe them to be true.  If called upon to testify, I would competently testify as to the matters stated herein.

3.      I have the authority to make this verification on behalf of RHI.

Joshua Howarth, on behalf of RHI

Sworn to before me this

27 day of April, 2018

NOTARY PUBLIC

My Commission Expires: 08/31/2018