# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ROBERT HALF INTERNATIONAL INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 18-cv-01001 (APM) |
| NICHOLAS BILLINGHAM, et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On June 29, 2018, the court granted a motion by Plaintiff Robert Half International, Inc., to preliminary enjoin its former employee, Defendant Nicholas Billingham, and Billingham's current employer, Defendant Beacon Hill Staffing, from violating an employment contract between Billingham and Plaintiff ("Employment Agreement"). As set forth in the court's Memorandum Opinion, the court found that Plaintiff was likely to succeed on its breach of contract claim against Billingham and its tortious interference claim against Beacon Hill. *See* Mem. Op., ECF No. 34 [hereinafter Memorandum Opinion]. Now before the court is Defendants' Motion to Dismiss the Verified Complaint, ECF No. 15 [hereinafter Defs.' Mot.]. For the reasons that follow, this motion is denied.[1]

I.

Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See generally* Defs.' Mot.; *id.*, Mem. of Pts. and Auths. in Supp. of Defs.' Mot., ECF No. 15-1 [hereinafter Defs.' Mem.]. In evaluating a motion to dismiss under

---

[1] Because the court's June 29, 2018, Memorandum Opinion, sets forth the allegations relevant to this dispute, the court does not repeat those allegations here. *See generally* Memorandum Opinion.

Rule 12(b)(6), the court accepts as true the plaintiff's factual allegations and "construe[s] the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). To survive the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 682, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

II.

The court begins with Defendants' arguments as to Plaintiff's two claims against Billingham: breach of contract and anticipatory breach of contract. *See* Verified Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 62–83. Defendants posit that Plaintiff cannot state either claim because the Employment Agreement is unenforceable. Defs.' Mem. at 4–9. This argument rests on the premise that Massachusetts law governs the Agreement and, under Massachusetts law, the Agreement is unenforceable because the terms of Billingham's employment materially changed during his four years with Plaintiff and the parties did not renew their original contract or enter into a new one. *See id*.

The court already has rejected Defendants' contention that Massachusetts law applies in this case, and does so again here. *See* Memorandum Opinion at 10–12. District of Columbia law governs the Employment Agreement. *Id*. at 12. Under District of Columbia law, Plaintiff has stated a breach of contract claim because it has alleged all of the requisite elements: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of

that duty; and (4) damages caused by the breach. *See Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015); *see also* Memorandum Opinion at 10–20 (explaining why Plaintiff is likely to succeed on its breach-of-contract claim).[2]

Turning next to the anticipatory repudiation claim,[3] Defendants contend that Plaintiff has not stated a claim because the cause of action does not apply to "unilateral contracts." More specifically, Defendants assert that because Robert Half's performance of the Employment Agreement has come to an end and because Billingham's remaining obligation—here, "a specified term of forbearance"—is "not yet due," what remains of the Employment Agreement is a unilateral contact that cannot be anticipatorily breached. *See* Defs.' Mem. at 9–11. This argument, however, misunderstands the contract at issue and misinterprets District of Columbia law.

As Defendants recite in their motion, a bilateral contract is one in which "both parties exchange mutual or reciprocal promises." Defs.' Mem. at 9 (quoting 1 Williston on Contracts § 1:17 (4th ed.)). A unilateral contract is one that "occurs when there is only one promisor and the other party accepts, not by mutual promise, but by actual performance or forbearance." *Id.* (quoting Williston § 1:17). In this instance, the contract between Billingham and Plaintiff is bilateral, not unilateral. Plaintiff promised to employ Billingham in exchange for Billingham's promise, among other things, to abide by the restrictive covenants in the Agreement. *See* Compl. ¶ 3 ("As a condition to his employment at [Plaintiff], Billingham entered into an employment agreement with [Plaintiff.]"). Billingham's promise included the *prospective* agreement that he would refrain from certain activities upon departing the company, three of which are relevant here:

---

[2] Moreover, as the court explained in its preliminary injunction decision, even if Massachusetts law applies, the court does not read Massachusetts law to require a new employment agreement whenever there is a material change in the employee's position. *See* Memorandum Opinion at 12–14. And, in any event, the parties here expressly agreed that the Agreement governs "regardless of the division or duties to which [Billingham] is assigned." *See* Agreement § 3.

[3] Plaintiff alleges an "anticipatory breach of contract" claim, also known as "anticipatory repudiation." *See Mashack v. Superior Mgmt. Servs.*, 806 A.2d 1239, 1241 (D.C. 2002) (recognizing these terms as interchangeable).

the non-compete covenant, and the provisions that bar the solicitation of customers and the solicitation of Plaintiff's employees. *See* Compl., Ex. A, ECF No. 1-1 [hereinafter Agreement], §§ 9–11. Defendants therefore are wrong in asserting that the Agreement became "unilateral after Billingham's resignation, and could not give rise to a cause of action for anticipatory breach . . . [until] forbearance for the specified term[ ] [became] due." Defs.' Mem. at 10–11. Billingham's obligations to forbear from certain non-competitive activities became due the moment he left Robert Half.[4] In that sense, the Employment Agreement has always been a bilateral contract.

Additionally, even if the Employment Agreement could be construed to have become a unilateral contract, Defendants have cited no case under District of Columbia law holding that a claim of anticipatory breach is unavailable to enforce expected violations of restrictive covenants. The very case on which Defendants rely, *Glenn v. Fay*, 281 F. Supp. 3d 130 (D.D.C. 2017), *see* Defs.' Mem. at 10–11, provides "that the doctrine of anticipatory repudiation is inapplicable to all unilateral contracts *for future payment of money only*." *Glenn*, 281 F. Supp. at 139 (emphasis added) (citing 23 Williston on Contracts §§ 63:60–61) (applying the doctrine to unilateral contracts where outstanding obligation is payment); *Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc.*, 252 F.3d 911, 915 (7th Cir. 2001) (describing the limitation on anticipatory repudiation as "if the payee has completely performed his side of the contract and is just awaiting payment, he can't declare a breach and sue for immediate payment just because he has reason (even compelling reason) to doubt that the other party will pay when due"). That principle plainly does not apply in this case.

Defendants' other ground for dismissing the anticipatory breach claim—that Plaintiff has not alleged "words or conduct that forcefully evidence an intent not to perform"—also fails. Defs.'

---

[4] In addition, under Section 8 of the Agreement, Billingham is barred from disclosing or misusing Plaintiff's confidential information (including the names and contact information of customers and prospective customers) both during his employment with Plaintiff and after. *See* Agreement § 8.

4

Mem. at 11. Viewing the allegations in the light most favorable to Plaintiff, it is entirely plausible that Billingham has anticipatorily breached certain terms of the Agreement. Billingham accepted employment with Plaintiff's direct competitor in the District of Columbia, he failed to respond to Plaintiff's letter seeking assurance he would abide by the restrictive covenants, and, upon starting at Beacon Hill, stated that he intended to "add[ ] to my team quickly, and tak[e] market share from [Beacon Hill's] competitors." *See* Compl. ¶¶ 42–43, 47–48, 77. These alleged words and actions are sufficient to plead a plausible claim of anticipatory repudiation of, at least, the non-compete and non-solicitation covenants of the Agreement.

### III.

Defendants also seek dismissal of the two claims against Defendant Beacon Hill, tortious interference with contract and unjust enrichment. As to the tort claim, Defendants contend that Plaintiff has not stated a claim because: (1) the claim depends on an unenforceable Agreement; (2) Billingham's employment was "at-will," and this kind of "employment agreement" usually "cannot form the basis for a tortious interference with contract claim under District of Columbia law"; and (3) Plaintiff has not "provide[d] any facts in support of its bare assertion that Beacon Hill committed any intentional interference" with Billingham's compliance with the restrictions in the Agreement. Defs.' Mem. at 12–14. Under District of Columbia law, tortious interference requires the plaintiff show: (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) the defendant's intentional interference with the relationship; and (4) resulting damages. *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038–39 (D.C. 2015). Those four elements constitute the plaintiff's prima facie case, which, once

established, shifts the burden to the defendant to show its conduct was justified or privileged. *Oneyoziri v. Spivok*, 44 A. 3d 279, 286–87 (D.C. 2012).

Because the court has already rejected Defendants' first ground for dismissal, the court starts with Defendants' argument that interference with Billingham's at-will employment cannot support a tortious interference claim. This warrants little discussion. Contrary to Defendants' suggestion, Plaintiff does not contend that Beacon Hill interfered with Robert Half's at-will employment of Billingham. Rather, Plaintiff's tort claim concerns what happened *after* Billingham resigned from Robert Half, when Plaintiff alleges that Beacon Hill interfered with the Agreement's restrictive covenants. *See* Compl. ¶ 1 ("Beacon Hill has tortuously interfered and is continuing to tortuously interfere with Billingham's employment agreement[.]"); *id*. ¶ 88 ("Beacon Hill knew or reasonably should have known that Billingham had a similar [employment] agreement that would prevent Billingham from working for Beacon Hill[.]"); *id*. ¶ 92 ("Beacon Hill's interference with the Agreement was and remains improper."); *id*. ¶ 94 ("Beacon Hill's interference with the Agreement has caused and continues to cause [Plaintiff] damages."); *id*. ¶ 95 ("Beacon Hill's interference with the Agreement was done and continues to be done in willful and wanton fashion[.]"). Therefore, it is immaterial whether Billingham's employment at Robert Half was "at will."[5]

Defendants' third argument—that the complaint lacks allegations of conduct by Beacon Hill that would constitute intentional interference—fares no better. Defs.' Mem. at 14; *see also* Compl. ¶ 91 ("Beacon Hill, by words or conduct, or both, intentionally caused Billingham to

---

[5] In any event, Defendants are wrong that District of Columbia law does not permit such claims in at-will employment relationships. In *Newmyer*, the D.C. Court of Appeals recognized that: "We have previously held that liability for tortious interference may lie where an actor interferes with an at-will employee's relationship with an employer." 128 A.3d at 1039 (citing *Sorrels v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc.*, 565 A.2d 285, 288, 291–92 (D.C. 1989)).

breach the Agreement."). First, Plaintiff alleges that Beacon Hill "knew or reasonably should have known" of the restrictive covenants in Billingham's Agreement with Plaintiff. Compl. ¶ 101. This is no conclusory assertion. Plaintiff ascribes knowledge to Beacon Hill based on a letter that it sent to Billingham *and* Beacon Hill's on March 21, 2018, setting forth the key terms of the Agreement and demanding assurance that Billingham would abide by the terms. *Id*. ¶¶ 47, 86, 88; *id*., Ex. D, ECF No. 1-4. Beacon Hill nevertheless continued to employ Billingham after receiving the letter. Compl. ¶ 90. Additionally, Plaintiff alleges that Beacon Hill "regularly and repeatedly engages in a practice of knowingly inducing individuals to breach their restrictive covenants," *id*. ¶ 60, as evidenced by more than 50 legal cases brought "by staffing industry competitors where Beacon Hill has employed persons in violation of their restrictive covenants," *id*. ¶ 61, including three by Plaintiff, *id*. ¶ 87. Taken together, these allegations at the pleading stage are sufficient to establish that Beacon Hill intentionally interfered with Billingham's performance of his obligations under the Agreement—both through hiring him and, following the March 21 letter, retaining him.

As to the unjust enrichment claim against Beacon Hill, Defendants argue that Plaintiff fails to allege "that Robert Half has *conferred* any discernable benefit on Beacon Hill." Defs.' Mem. at 15. Under District of Columbia law, the elements of an unjust enrichment claim are: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Falconi-Sachs v. LPF Senate Square, LLC*, 142 A.3d 550, 556 (D.C. 2016) (citation omitted). "The word 'benefit[ ]' denotes any form of advantage." *Bregman v. Perles*, 747 F.3d 873, 878 (D.C. Cir. 2014) (quoting the Restatement (First) of Restitution § 1, cmt. b). Thus, a person confers a benefit upon another if she "performs services beneficial to or at the request of the other . . . *or in any way adds to the*

7

*other's security or advantage.*" *Id.* (quoting the Restatement (First) of Restitution § 1, cmt. b) (emphasis added).

The definition of "benefit" is satisfied here. Plaintiff alleges that Beacon Hill received a "benefit" from Billingham's employment, through the revenue that he generates, Compl. ¶ 98; his professional training, *see id*. ¶ 24; his relationships with customers and candidates, *see id*. ¶ 17; and his industry knowledge, *see id*. ¶ 21. Beacon Hill's retention of these benefits is "unjust" as they are benefits that Billingham is barred, by the Agreement, from conferring on Beacon Hill. The Restatement of Restitution recognizes an unjust enrichment claim obtains in analogous circumstances. *Cf.* Restatement (First) of Restitution § 137 (explaining that the owner of a trade secret, whose employee sells the trade secret to a third party who then profits from that secret, is entitled to the profits the third party makes from the secret's use). In sum, then, Plaintiff's allegations are sufficient, at the pleading stage, to state a claim of unjust enrichment.

IV.

For the foregoing reasons, Defendants' Motion to Dismiss the Verified Complaint, ECF No. 15, is denied.

Dated: July 12, 2018

Amit P. Mehta
United States District Judge